**David Bacon Law Firm**

**davidbaconlaw@gmail.com, 626 616 9930**

**119 S. Atlantic Blvd., Suite 306,**

**Monterey Park, CA 91754-1680**

**Attorney for Petitioner Cuixiao Zhang**


### IN THE UNITED STATES DISTRICT COURT

### For the Central District of California

| | | |
|---|---|---|
| **Cuixiao Zhang** | ) | |
| *Petitioner* | ) | |
| **v.** | ) | **Civil No 2:24-cv- 00150** |
| **Secretary of Dept. of Homeland Security** | ) | |
| **Director of US Citizenship and Immigration** | ) | **PETITION FOR WRIT OF** |
| **Services** | ) | **MANDAMUS AND FOR RELIEF** |
| **Los Angeles District Director of the US** | ) | **UNDER THE ADMINISTRATIVE** |
| **Citizenship and Immigration Services** | ) | **PROCEDURE ACT** |
| **Director of Los Angeles Asylum Office** | ) | |
| **US Attorney General, US Dept. of Justice** | ) | |
| **The US Attorney, The US Attorney's Office** | ) | |
| **for The Central District of California** | ) | |
| *Respondents* | ) | |

# Table of Contents

Table of Citations…………………………………………….…………...…i,ii,iii,iv

**Statement of Original Jurisdiction and Venue**……………………………….…………**1**

**Statement of the Issues**……………………………………………………………**2**

**Statement of the Case and Facts**……………………………….……………………**2**

**Course of the Proceedings and Disposition**……………………………………**3**

**Summary of the Argument**…………..…………………………………………**3**

**Standard of Review**………………………………………………………………**4**

**Arguments**………………………………………………………………………**4**

**Conclusion-Relief Required**……………..………………………………………..**19**

**Certificate of Compliance**…………………………………………………………**20**

**Certificate of Service**…………………………………………………………**21**

**Exhibit A**…………………………………………………………………...**22**

**Exhibit B**…………………………………………………………………...**26**

# Table of Citations

**CASES**                                                                           **Page**

A.B.T. v. USCIS No. 2:11-cv-02108 RAJ, 2012 WL 2995064, at 3-4 (D.Wash. July 20, 2012).16

Alkassab v. Rodriguez, No. 2:16-cv-1267-RMG, WL 1232428 at *4-5 (D.S.C. Apr. 3, 2017)...10

Alkenani v. Barrows, 356 F. Supp. 2d 652, 657 & n.6 (N.D. Tex. 2005)…………………….12

Alkeyani v. DHS, 514 F. Supp. 2d 258, 266 (D. Conn. 2007)…………………………………..18

Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 191 (D.C. Cir. 2016)………………………………13

Amadei v. Nielsen, 348 F. Supp. 3d 145, 157 (E.D.N.Y. 2018)…………………………………..4

Barrios Garcia v. US Dept of Homeland Sec., 25 F.4th 430, 451, 452, 454 (6th Cir. 022)..4,12,13

Bennett v. Spear, 520 U.S. 154, 178 (1997)………………………………………………………7

Brezeinsk v. US Dept of Homeland Sec., 2008 WL 2413896………………………………...…18

California ex rel. Becerra v. Sessions, 284 F. Supp. 3d 1015, 1031-32 (N.D. Cal. 2018)……….7

Dae Hyun Kim v. Ashcroft, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004)……………………..…16

Daraji v. Monica, No. 07-1749, 2008 WL 183643, *6-7 (E.D. Pa. Jan. 18, 2008)………...……18

Galvez v. Howerton, 503 F. Supp. 35, 39 (C.D. Cal. 1980)………………………………….....18

Gill v. U.S. DOJ, 913 F.3d 1179, 1185 (9th Cir. 2019)……………………………………..7

Gonzalez Rosario v. U.S. Citizenship & Immigr. Servs., 365 F. Supp. 3d 1156, 1161 (W.D. Wash. 2018) (SUWA, 542 U.S. at 71)……………...………………………………....…...…11

Han Cao v. Upchurch, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007)……………………………..3

Hassane v. Holder, No. C10-314Z, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010)..…...6

He v. Chertoff, 528 F. Supp. 2d 879, 882-83 (N.D. Ill. 2008)…………………………………..8

Hui Dong v. Cuccinelli, No. CV 20-10030, 2021 WL 1214512, at *2 (C.D. Cal. Mar. 2, 2021)...9

Iddir v. Immigration and Naturalization Service, 301 F.3d 492 (2002)……………………....9,10

Jianhua Dong v. Chertoff, 513 F. Supp. 2d 1158, 1171-72 (N.D. Cal. 2007)……………....……18

Jin v. Heinauer, No. 2:07-cv-0068, 2007 WL 4287657, *4 (S.D. Oh. Dec. 4, 2007)…………..18

Kamal v. Gonzales, 547 F. Supp. 2d 869, 878 (N.D. Ill. 2008)…………...………………………7

Kashkool v. Chertoff, 553 F. Supp..2d 1131, 1142, 1147 (D. Ariz. 2008)…………………….4,12

Liu v. Chertoff, No. CV-06-1682-ST, 2007 WL 2435157, at *96 (D. Or. Aug. 29, 2007)…...…18

Loo v. Ridge, 2007 WL 813000, at *3…………………………………………………...…10

Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992……………………………………………..4

Nat. Res. Def. Council, Inc. v. US Envtl. Prot. Agency, 956 F.3d 1134, 1139 (9th Cir. 2020)…14

Nigmadzhanov v. Mueller, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008)………………………...11

Nine Iraqi Allies under Serious Threat v. Kerry, 168 F. Supp. 3d 268, 293-94 (D.D.C. 2016)…12

Norton v. S. Utah Wilderness Alliance (SUWA), 542 U.S. 55, 6, n.1 (2004)……………………4

Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 553 (9th Cir. 1990)…………………………..9

Ou v. Johnson, No. 15-cv-03936, 2016 WL 7238850, at *3 (N.D. Cal. Feb. 16, 2016)……...…9,12

Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997)………………………………………………...9,10

Paunescu v. I.N.S., 76 F. Supp. 2d 896, 903 (N.D. Ill. 1999)……………………………..…10

Pesantez v. Johnson, 2015 WL 5475655, at 2, 15 Civ. 1155(BMC)(E.D.N.Y.(2015).....………16

Potomac Electric Power Co. v. ICC ("PEPCO"), 702 F.2d 1026, 1034 (D.C. Cir. 1983)………14

Poursohi v. Blinken, No. 21-cv-01960, 2021 WL 5331446, at *5-6 (N.D. Cal. Nov. 16, 2021)..14

Razik v. Perryman, No. 02 C 5189, 2003 WL 21878726, at *2 (N.D. Ill. Aug. 7, 2003)…...……9

Ren v. Mueller, No. 6:07-cv-790-Prl-19DAB, 2008 WL 191010, at *7 (M.D. Fla. Jan. 22, 2008) (citing SUWA, 542 U.S. at 65)…………………………………………………..……11

Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir. 2008))…………………………..4

Ruiz v. Wolf, No. 20 C 4276, 2020 WL 6701100, at *3 (N.D. Ill. Nov. 13, 2020)……………..11

Singh v. Still, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007)……………………………………..6

Tailawal v. Mayorkas, No. 221515, 2022 WL 4493725, at *3 (C.D. Cal. Aug. 18, 2022)….6,9,10

Tang v. Chertoff, 493 F. Supp. 2d 148, 158 (D. Mass. 2007)……………………………...……18

Thompson v. United States Dept. of Housing Urban Development, *SUWA*, 542 U.S. (2006)…....9

Telecomm. Rsch & Action Ctr. v. FCC, 750 F.2d 70 (D.C. Cir. 1984)…………………………13

Viet. Veterans of Am v. Shinseki, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)..……………………..3

Villa v. U.S. Dept. of Homeland Security, 607 F. Supp. 2d at 363(2009)…………..………….11

Wang v. Gonzales, No. 07-CV-02348-HRL, 2007 WL 2972917, at 5 (N.D.Cal. Oct. 10,2007)..17

Yu v. Brown, 36 F. Supp. 2d 922, 930-31, 32 (D.N.M. 1999)……………………………...9,10

Zhou v. FBI Director, No. 07-cv-238-PB, 2008 WL 2413896, at *7 (D.N.H. June 12, 2008)….18

**STATUTES**                                                              **Page**

Mandamus Act 28 U.S.C. Sec. 1361……..…..…………………………………………...…1, 3

Mandamus Act 28 U.S.C. Sec. 1331………………………………………………………...…1

Immigration and Nationality Act 8 U.S.C. Sec. 1158(a)………………………………………..1,8,9

Venue Generally 8 U.S.C. Sec. 1391(e)………………………………….......................2

Administrative Procedure Act Sec. 706 (1), 5 U.S.C. §§ 555(b)………………….…………….3,4

Asylum 8 U.S.C. Sec. 1158(d)(5)(A)……...…………………………………………………….…3

5 U.S.C. Sec. 706(1)……………………………………………………………...4,13

LIFO, www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (Jan. 31, 2018)...5

8 U.S.C. Sec.1252(a)(2)(B)(ii) ……………….………………………………….………..6

8 U.S.C. Sec. 1252(a)(2)(B)……………………………………………………………..6

5 U.S.C. Sec. 704……...…………………………………………………….6

5 U.S.C. Sec. 551(13)……………………………………………………..7

8 U.S.C. Sec. 1158……………………………………………………...8

8 U.S.C. Sec. 1158 (d)(3)……………………………………………….8

8 U.S.C. Sec. 1159 (b)……………………...…………………….….. 8

8 U.S.C. Sec. 1225(b)……………………………………………….8

8 U.S.C. Sec. 1158(d)(5)(A)(ii)…………...……………………….9

INA, Sec. 245………………………...…....……………………….9

8 U.S.C. Sec. 1158(d)………………………………………………....10

8 U.S.C. Sec. 1158(d)(7) …………………………………………10

8 U.S.C. Sec. 1158(d)(5)(A)……………………………………….10,12

8 C.F.R. Sec. 208.9(a),…………………………………………...11,12

5 U.S.C. Sec. 555(b)……………………………………………....12

8 U.S.C. Sec. 208 (d)(5)(ii-iii)……………………………………...15

**Statement of Original Jurisdiction and Venue**

The petitioner Cuixiao Zhang has Original Jurisdiction and Venue in the United States District Court for the Central District of California.

The Mandamus Act, codified at 28 U.S.C. § 1361, states: "The district courts shall have original jurisdiction . . . to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  Jurisdiction for an Administrative Procedure Act ("APA") delay claim is found in 28 U.S.C. § 1331, which provides a federal court with jurisdiction over federal questions.  Because the agencies have a non-discretionary duty to act under 8 U.S.C. § 1158(a), the INA's jurisdiction-stripping provisions do not bar review of a delay claim.

The agencies may argue that the petitioner lacks standing to challenge the policy of last in first out (LIFO) because there is no injury-in-fact, traceability, or redressability.  The petitioner, however, has suffered injury-in-fact because:

1)  **LIFO creates a real fear** that the petitioner will **never obtain adjudication**, which already has been **delayed 7.5 years** (Exhibit A shows the LIFO did not reduce any delays.  **Exhibit A** includes: Total Number of Pending Form I-589 Applications by Fiscal Year & Quarter and I-589 Affirmative Asylum Summary Overview).

2)  Because of the 7.5 years delay and waiting, the petitioner **has been separated from her husband and two children for 8 years.  Due to uncertainty of her asylum application, she cannot find a suitable job.  Without a suitable job and worrying her husband and two children daily, her life is not enjoyable.  She has waited for 7.5 years.  Is it asking too much to give her an interview?**

3) During the 7.5 years of extraordinary delay, the petitioner cannot apply her husband and two children for status adjustments.  Based on the fear to be persecuted in China due to her asylum application, Cuixiao Zhang still cannot reunite with her husband and two children.

4) The emotional anguish that comes from the **threat of deportation and persecution in China is high and daily**, which exacerbates the preexisting trauma above.

**Venue**: Pursuant to 28 U.S.C. § 1391(e), venue for mandamus and APA actions is proper in the judicial district in which the defendant "resides," "a substantial part of the events or omissions giving rise to the claim occurred," or the plaintiff "resides." 28 U.S.C. § 1391(e).  The defendant agencies and the petitioner reside in California.

## Statement of the Issues

Whether the petitioner is entitled to a Writ of Mandamus and Relief under the Administrative Procedure Act for **7.5 years' delay** of her asylum application?

## Statement of the Case and Facts

Ms. Cuixiao Zhang singed her I- 589 (Application for Asylum and for Withholding of Removal) on June 1, 2016.  The US Department of Homeland Security, USCIS and Los Angeles Asylum Office received her application in June 2016 and issued her the A# 209 179 997 and issued her a I-797 C for biometric collections.  Ms. Cuixiao Zhang completed her biometric collections in June 2016 in the USCIS El Monte at 9251 Garvey Ave., Suite Q, So. El Monte, CA 91733-4611.  Since then, the petitioner has not received any response from the Agency.  On December 9, 2023, this firm sent a Notice

1    of Intent to File Lawsuit to Los Angeles Asylum Office.  After 30 days, the firm has not

2    received an interview notice.

3         **Exhibit B includes**: Notice of Intent to File Lawsuit and Ms. Cuixiao Zhang's

4    Asylum Application Statement.

5

6                         **Course of the Proceedings and Disposition**

7         Lawsuits for delay will allege APA and Mandamus Act causes of action. *See*, *e.g.*,

8    *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010); *Han Cao v.*

9    *Upchurch*, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007) ("Most of the courts that have

10   addressed the issue agree that, for purposes of compelling agency action that has been

11   unreasonably delayed, the mandamus statute and the APA are coextensive"). The APA

12   serves as the cause of action. *See* 5 U.S.C. §§ 555(b), 706(1).  The mandamus statute

13   provides both the jurisdiction and cause of action for a claim under that statute, § 1361.

14        The agencies have received the petitioner' I-589 Asylum Application on June

15   2016 and the agencies have not scheduled an interview for **7.5** years.  **The timeframe**

16   **is the agencies shall interview the petitioner within 45 days and give final**

17   **adjudication within 180 days after her application is filed, see 8 U.S.C. Sec. 1158**

18   **(d)(5)(A).**

19

20                              **Summary of the Argument**

21        The agencies' 7.5 years delay is egregious.  Based on the Mandamus Act, the

22   petitioner has a clear right to the relief requested; the agencies have a nondiscretionary

23   and clear duty to perform the act in question; no other adequate remedy is available

                                              3

and the agencies have delayed the process for 7.5 years.  The APA, 5 U.S.C. §§ 555(b) and 706(1), serves as a vehicle for challenging unreasonable agency delays and inaction. *Barrios Garcia v. U.S. Dep't of Homeland Sec.,* 25 F.4th 430, 451 (6th Cir. 2022). Section 555(b) provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." Section 706(1) provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed."  The petitioners are entitled to relief under the APA because the petitioners "establish that the defendant had a nondiscretionary duty to act." *See Norton v. S. Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 6, n.1 (2004), (like the mandatory action requirement in the mandamus statute, action that is "unlawfully withheld" necessarily must be action that is "legally required").  And the petitioner here will show that the challenged delay is unreasonable. *See*, *e.g.*, *Kashkool v. Chertoff*, 553 F. Supp.2d 1131, 1142 (D. Ariz. 2008).  This is not the American Dream.  Only this Court can set justice straight.

**Standard of Review**

The agencies' failure to act is measured by the two statutes.

**Arguments**

**I.     Standing** (some discussions carried in Statement of Original Jurisdiction)

The petitioner has standing to sue.  Standing requires that (1) the plaintiff suffered injury-in-fact that is concrete, particularized, and actual or imminent, (2) the injury is traceable to the defendant's actions, and (3) the injury can be redressed by the court." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  There is a "'low threshold' for establishing an injury in fact." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 157 (E.D.N.Y. 2018) (quoting *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008)).  An

4

injury-in-fact "may simply be the fear or anxiety of future harm." *Id.* at 158.

An injury-in-fact already exists because the petitioner faces uncertainty about how long she must wait and whether she will ever get an interview.  The 7.5 years that the petitioner has been waiting demonstrate that her fears of a long wait are brutally real.

The petitioner is injured by USCIS's policy of LIFO. *See* USCIS, *USCIS to Take Action to Address Asylum Backlog*, https://www.uscis.gov/archive/uscis-to-take-action-to-address-asylum-backlog (Jan. 31, 2018).  Because USCIS also fails to timely schedule new applications, applicants with older-filed applications are in multiyear limbo.  The petitioner's fear that she may never obtain adjudication is **not merely speculative based on the statistics covering interview scheduling (see Exhibit A).**

Here injuries are most directly caused by LIFO, notwithstanding other potential contributing factors.  The injuries are redressable because there are possible alternatives to LIFO that will not keep applicants waiting in line for an indefinite amount of time.  For example, if the agencies schedule asylum interview by First in First out, the petitioner will have hope to have the interview.  And, the LIFO is a "final agency action" because it threatens to deny many asylum applicants the right to adjudication entirely, which clearly affects rights and produces legal consequences.  LIFO is not simply a matter of discretionary sequencing, but in practice creates such unreasonable delays that it prevents some asylum applicants from ever receiving an interview.

A. Jurisdiction-Stripping Provisions of the INA

The INA contains a specific provision that a few courts—but not the majority—have relied on to dismiss immigration-related mandamus actions. This section reads: (B) Denials of discretionary relief: Notwithstanding any other provision of law (statutory or

nostatutory)… no court shall have jurisdiction to review--- Nonetheless, most courts have held that this provision does not prevent judicial review of APA or mandamus cases brought about by the agencies' unreasonable delay in adjudicating a case; these decisions reason that, while the decision itself may be discretionary, **the agency has a nondiscretionary duty to act** and 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar review of its failure to act.  This is the only just and proper rule.  It is an imperative.  *See Hassane v. Holder*, No. C10-314Z, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010) (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar judicial review of unreasonable delay claims involving adjustment of status and stating that this is consistent with the "overwhelming majority of district courts" and collecting cases finding jurisdiction despite § 1252(a)(2)(B) defense claims).

B. APA Prerequisites: Final Agency Action and Non-Discretionary Action

The APA provisions are controlling.  The statute specifically defines "final agency action" as a failure to act, and second, even where an agency's ultimate decision is discretionary, in most instances, agencies do not have discretion over *whether* to adjudicate an application. *See* 5 U.S.C. § 551(13); *Tailawal v. Mayorkas*, No. 221515, 2022 WL 4493725, at *3 (C.D. Cal. Aug. 18, 2022) (finding that the INA requires USCIS to adjudicate asylum applications and denying government's motion to dismiss APA claim); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (noting in the context of asylee adjustment the distinction between the agency's discretion over *how* to adjudicate an application and its discretion over *whether* it adjudicates an application, which this court found to be nondiscretionary).

Only "final agency action" under the APA is subject to judicial review. 5 U.S.C. § 704.

"[A]gency action," in turn, is defined as an "agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or *failure to act.*" 5 U.S.C. § 551(13).  Final agency action must (1) "mark the 'consummation' of the agency's decision-making process" and (2) "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997).

In evaluating APA cases, the court should consider the direct impact on the parties involved when analyzing whether USCIS's action is one by which rights have been determined or from which legal consequences will flow. *See Gill v. U.S. DOJ,* 913 F.3d 1179, 1185 (9th Cir. 2019); *California ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031-32 (N.D. Cal. 2018).  Lengthy asylum interview wait times have effectively denied the petitioners' right to adjudication, and USCIS's action is one by which their rights have been determined and from which legal consequences flow.  **Justice delayed becomes justice denied**.

Under the LIFO, the policy is not simply about discretionary sequencing decisions. Rather, the issue is that **this policy creates such an unreasonable delay that they prevent asylum applicants from ever receiving an interview in practice** because new asylum applications have exhausted the agencies' interview ability.  Application of the LIFO policy to a client's asylum application will result in the client never getting an interview and that overcomes many of the government's arguments.  USCIS's own backlog statistics show that USCIS will never schedule these many-years delayed cases under a LIFO policy. *See, e.g., Kamal v. Gonzales*, 547 F. Supp. 2d 869, 878 (N.D. Ill. 2008) (finding plaintiff was "challenging USCIS's failure altogether to decide" adjustment application pending for over five years and denying government motion to

dismiss); *He v. Chertoff*, 528 F. Supp. 2d 879, 882-83 (N.D. Ill. 2008) (collecting cases holding that USCIS cannot have "absolute discretion over the pace of adjudication because this could in theory lead to indefinite delay for which mandamus relief would be unavailable"); *see* Part IV. A. Reframing the argument this way recenters plaintiffs' right to adjudication and the government's duty to adjudicate under 8 U.S.C. § 1158.

## II.   Mandamus Action

Petitioners seeking a writ of mandate must affirmatively show that:

(1) They have a clear right to the relief requested;

(2) The defendant has a clear duty to perform the act in question; and

(3) No other adequate remedy is available.

### A.  Here, The Petitioner has a Clear Right to the Relief Requested

The petitioner paid $1225 for the application and $410 for the employment authorization, which the petitioner gained the right by making the payment and the agencies accepted the duty to adjudicate the petitioner' application by receiving petitioner' payment. See 8 U.S.C. Sec. 1158 (d) (3) Fee "The Attorney general may impose fees for the consideration of an application for asylum, for employment authorization and for adjust of status under Sec. 1159 (b)."

8 U.S.C. Sec.1158. Asylum (a) Authority to apply for asylum (1) In general: Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, sec. 1225(b) of this title.

Under the INA, the petitioner has the right to apply for asylum.  *See Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 553 (9th Cir. 1990) (citing, inter alia, 8 U.S.C. § 1158(a)).  Courts have denied the government's motions to dismiss on the grounds that asylum seekers have the right to have asylum applications adjudicated, even if the ultimate decision is discretionary. *See Tailawal*, 2022 WL 4493725, at *3  ("The language of Section 1158(d)(5)(A)(ii) is mandatory."); *Hui Dong v. Cuccinelli*, No. CV 20-10030, 2021 WL 1214512, at *2 (C.D. Cal. Mar. 2, 2021) ("[U]se of the word 'shall' with respect to adjudication of an asylum application and the time frame for conducting an interview for an asylum application in the statute and regulations demonstrates that the adjudication of asylum applications is not a discretionary act."); *see also Ou v. Johnson*, No. 15-cv-03936, 2016 WL 7238850, at *3 (N.D. Cal. Feb. 16, 2016) (finding that "processing Ou's asylum application was a 'discrete agency action that [USCIS was] required to take'") (quoting *SUWA*, 542 U.S. at 64).  **Shall means shall, not may**.

In other contexts, courts have also held that where there is a right to apply for a benefit, there is a right to receive a decision on the application. *See, e.g., Iddir*, 301 F.3d at 500 (finding the right to have a diversity visa application adjudicated); *Patel v. Reno,* 134 F.3d 929, 933 (9th Cir. 1997) (right to visa application adjudication); *Yu v. Brown*, 36 F. Supp. 2d 922, 930-31 (D.N.M. 1999) (finding a right to have Special Immigrant Juvenile (SIJ) applications adjudicated because SIJ applicants fell "within the zone of interest of the INA provisions for SIJ and LPR status."); *Razik v. Perryman*, No. 02 C 5189, 2003 WL 21878726, at *2 (N.D. Ill. Aug. 7, 2003) (noting that courts have consistently held that INA § 245 provides a right to have an application for adjustment of status adjudicated).  Because the petitioner has the right to apply for asylum, she has

the right to receive decisions on her asylum application.

The petitioner' right to adjudication within a reasonable period of time [under the APA] exists independently of § 1158(d), and the Court concludes that § 1158(d)(7) is not so broad as to strip Plaintiff of her right to challenge all delays in the adjudication of her asylum application, no matter how egregious."); *Alkassab v. Rodriguez*, No. 2:16-cv-1267-RMG, 2017 WL 1232428, at *4-5 (D.S.C. Apr. 3, 2017).  Moreover, other courts have noted that the time frames in § 1158(d) (5)(A) (stating that "in the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed" and that "final administrative adjudication of an asylum application" should be completed within 180 days after the application is filed) although not creating an enforceable right— were instructive for determining whether a delay was reasonable. See *Tailawal*, 2022 WL 4493725, at *3 (noting plaintiff's reference to 45-day limit as an indication of the unreasonableness of two-and-a-half-year delay).  **To an asylum applicant, a 7.5 years delay in an interview is infinite.**

**B. The defendant agencies owe the petitioners a mandatory or ministerial duty.**

The USCIS has a mandatory duty to adjudicate an application. *See, e.g., Iddir*, 301 F.3d at 500 (duty to adjudicate applications under the diversity lottery program); *Patel*, 134 F.3d at 933 (duty to adjudicate visa application); *Paunescu v. I.N.S.*, 76 F. Supp. 2d 896, 903 (N.D. Ill. 1999) (duty to adjudicate a diversity visa); *Yu*, 36 F. Supp. 2d at 932 (duty to process SIJ application in a reasonable amount of time); *Hoo Loo,* 2007 WL 813000, at *3 ("Indeed, numerous courts have found that immigration authorities have a non-discretionary duty to adjudicate applications.").

Further, the duty to render a decision on an application is mandatory even where the underlying decision to be made by the agency is a discretionary one; thus, mandamus actions can be used to compel the government to exercise its discretion in a case where the government has failed to take any action. *See, e.g., Villa*, 607 F. Supp. 2d at 363 (duty to adjudicate adjustment application in a reasonable amount of time).  In the immigration context, including asylum, USCIS often has a general duty to take *some* action, but does not have a duty to exercise its discretion in any specific manner. *See Ruiz v. Wolf*, No. 20 C 4276, 2020 WL 6701100, at *3 (N.D. Ill. Nov. 13, 2020) (holding in a U visa case that "a discretionary decision to grant or deny an application is separate and distinct from the nondiscretionary duty to adjudicate those applications."); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546 (S.D.N.Y. 2008) (the Attorney General has discretion to grant or deny an application, but does not have discretion to simply never adjudicate an adjustment application).

The regulatory language at 8 C.F.R. § 208.9(a) binds the agencies.  This statute can provide the "duty" necessary for either a mandamus or APA delay action.  Language in an agency's regulations may "create[] a commitment binding on the agency." *SUWA*, 542 U.S. at 71; *see also Gonzalez Rosario v. U.S. Citizenship & Immigr. Servs.,* 365 F. Supp. 3d 1156, 1161 (W.D. Wash. 2018) ("[T]he court discerns no reason to differentiate the mandatory regulatory deadlines at issue here from the mandatory statutory deadlines."); *Ren v. Mueller*, No. 6:07-cv-790-Prl-19DAB, 2008 WL 191010, at *7 (M.D. Fla. Jan. 22, 2008) (citing *SUWA*, 542 U.S. at 65) ("Thus, when an agency uses mandatory language like 'shall,' a court should find there is a legal duty to act."). By regulation, DHS has imposed on itself such a duty, mandating that "[t]he Service

*shall adjudicate* the claim of each asylum applicant" who has filed a complete

application. *See* 8 C.F.R. § 208.9(a); *see also Ou*, 2016 WL 7238850, at *3

("[P]rocessing Ou's asylum application was a 'discrete agency action that [USCIS was]

required to take.'") (quoting *SUWA*, 542 U.S. at 64).

**C. 7.5 years delay for an interview is highly unreasonable**

The timeframe of 45 days for interview and 180 days for final decision in **Sec. 1158 (d)(5)(A) indicates a 7.5 years delay is unreasonable length.** *Nine Iraqi Allies*, 168 F. Supp. 3d 268, 293-94 (D.D.C. 2016) (finding unreasonable delay when statutes provided a clear nine-month timeline for adjudicating Special Immigrant Visas for certain Iraqi and Afghan nationals); *Kashkool*, 553 F. Supp. 2d at 1147 (finding, after applying 5 U.S.C. § 555(b) (APA), that the nearly six-year delay in adjudicating plaintiff's adjustment application was unreasonable). Courts have found delays in adjudicating immigration applications to be manifestly unreasonable when the delays are lengthy. *Compare Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 452 (6th Cir. 2022) (finding a five-year delay for an initial U visa determination unreasonable), *with Alkenani v. Barrows*, 356 F. Supp. 2d 652, 657 & n.6 (N.D. Tex. 2005) (finding a 15-month delay was not unreasonable, but noting that decisions from other jurisdictions suggest that delays approximating two years may be unreasonable).

Due to the LIFO policy, **asylum applications before the petitioner's and after the petitioner's have received interview notices.** Usually, the asylum applicants receive interview notice within 3 weeks after they submit their biometrics collections.

And a delay is "not unusual" does not make it reasonable. Delay in this case is far more excessive than other "usual delay". *See Barrios Garcia*, 25 F.4th at 454 ("We find

it unhelpful to fixate on the average snail's pace when comparing snails against snails in

a snails' race.")  The Agencies appear to tolerate snail paces.

**D. There is no another remedy available**

The petitioner has no other avenues available to expedite the adjudication.  Even

though the petitioner and his previous lawyer had requested the Los Angeles Asylum

Office to give an interview and this firm submitted a Request for Expediting Asylum

Interview Based on Urgent Humanitarian Reasons, the agencies did not respond with

an interview notice.

While waiting for an asylum interview, petitioner has no other form of relief than

waiting on the adjudication of his application. *Am. Hosp.  Ass'n v. Burwell*, 812 F.3d

183, 191 (D.C. Cir. 2016) (finding that an administrative "escalation" process was not

"an adequate or exclusive remedy where, as here, a systemic failure causes virtually all

appeals to be decided well after the statutory deadlines.").

Possibly, the agencies may argue that while the petitioner had the *opportunity* to

pursue a viable APA claim, courts should still dismiss the APA action because the

petitioner failed to bring that colorable APA claim in the lawsuit.  However, the agencies

cannot simultaneously assert that there is an alternative remedy in the form of an APA

claim while also arguing that plaintiffs are not entitled to APA relief.

**III        APA Delay Action**

Under the APA, 5 U.S.C. § 706(1), USCIS has a duty to adjudicate asylum claims

within a reasonable period.  Courts generally will analyze a list of six factors, known as

the TRAC factors, to determine whether any adjudication delay was reasonable.

*Telecomm. Rsch & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984):

1.  The time agencies take to make decisions must be governed by a "rule of reason";

2.  Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

3.  Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

4.  The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

5.  The court should also consider the nature and extent of the interests prejudiced by delay; and

6.  The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

The petitioner's APA action has passed the TRAC tests:

**A. The time agencies take to make decisions must be governed by a "rule of reason"**

Under the "rule of reason," courts consider "whether the time for agency action has been reasonable," considering the "length of the delay" and the "reasons for delay," *Poursohi v. Blinken*, No. 21-cv-01960, 2021 WL 5331446, at *5-6 (N.D. Cal. Nov. 16, 2021); *In re Nat. Res. Defense Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020). The "rule of reason" that governs the pace of administrative proceedings is meant to eliminate excessive delay and protect public confidence in the agency's ability to timely discharge its duties. *Potomac Electric Power Co. v. ICC ("PEPCO")*, 702 F.2d 1026,

1034 (D.C. Cir. 1983) ("Quite simply, excessive delay saps the public confidence in an
agency's ability to discharge its responsibilities and creates uncertainty for the parties,
who must incorporate the potential effect of possible agency decision making into future
plans."). **The 7.5 years delay is too long and the LIFO policy is not reasonable.**

At present, the asylum backlogs have reached more than 5 years in certain parts of
the country, and because USCIS utilizes LIFO, that backlog continues to grow such that
final adjudication of the petitioner's application will take far longer.  Such a delay is
unreasonable under the "rule of reason."  USCIS publishes data on the number of
interviews scheduled and completed each month and separately publishes the number
of new asylum applications filed each month.  For the last two years, in most asylum
offices, new asylum applications have outpaced the number of applications adjudicated
using LIFO processing, showing a high probability that the petitioners stuck in asylum
backlogs **may never receive an interview under the LIFO process**.  Exhibit A shows
that the LIFO process has not reduced the asylum application backlog; rather, it has
steadily grown since USCIS introduced LIFO processing at the beginning of 2018.  In
addition, national statistics show that new Form I-589 filings have outpaced
adjudications for each quarter in Fiscal Year 2020 and 2021, and for the first three
quarters of Fiscal Year 2022.  Thus, because new filings are outpacing cases
adjudicated, USCIS may never get to the asylum cases at the back of the line using
LIFO processing.

B.    **Where Congress has provided a timetable or other indication of the
speed with which it expects the agency to proceed in the enabling statute,
that statutory scheme may supply content for this rule of reason**

15

The harsh contrast between the actual 7.5 years delay in asylum adjudication and the statutory guidelines make it clear that this delay is excessive.  It is beyond oppressive.  Congress has explicitly set out a timetable with which it expects USCIS to comply.  Congress mandated that asylum interviews "shall commence not later than 45 days after the date an application is filed" and that "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 208(d)(5)(ii-iii).  As noted above, these provisions do not create a cause of action, *see Pesantez*, 2015 WL 5475655, at *2, but they demonstrate clear congressional intent that asylum applications should be promptly adjudicated.

C.    **Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake**

Human health and welfare are at its highest risk in the asylum context.  Although asylum applicants are allowed to remain in the United States throughout the adjudication period, they are **left in "limbo" without the ability to petition to rescue family members who may still be facing danger to their health and welfare in the country of persecution**. *See*, *e.g., Dae Hyun Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[T]he [agency] simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely.  This result is explicitly foreclosed by the APA.")  The long-unadjudicated asylum application put the petitioners into fear and vulnerability. *See*, *e.g.*, *A.B.T. v. USCIS*, No. 2:11-cv-02108 RAJ, 2012 WL 2995064, at *3-4 (D. Wash. July 20, 2012).

Additionally, the petitioner Cuixiao Zhang own health and welfare can be directly

impacted by these lengthy states of "limbo" where she cannot feel safety for her

husband and two children in China, cannot gain closure to the events she has suffered

through and cannot do the work she wanted or have a normal family life.

The petitioner suffers mental distress also due to the never-ending lengthy of delay

because the delays preclude her ability to adjust statuses to lawful permanent resident

and U.S. citizen and preclude her abilities to reunite with her husband and two children

and preclude her ability to reach her life goal.

The petitioner also suffers economic harm due to the great length of delay because

she cannot apply for the job she wants that requires a green cards.

The threat of deportation causes emotional anguish, that is high and daily, which

exacerbates the preexisting trauma above.  Year after year, the cycle of delay keeps

turning like wheel and grinding her down.

**D. The court should consider the effect of expediting delayed action on**

**agency activities of a higher or competing priority**

The Plaintiffs' "goal is not expedited adjudication but rather to ensure that they—

along with other asylum applicants—will obtain adjudication *at some point* and without

unreasonable delay. *See Wang v. Gonzales,* No. 07-CV-02348-HRL, 2007 WL

2972917, at *5 (N.D. Cal. Oct. 10, 2007)".  Because USCIS is adjudicating asylum

applications on a LIFO basis, they are not cutting the line but, rather, trying to maintain

the integrity of the "line," such that the newer applications are adjudicated before earlier-

filed applications.  Indeed, for those in the backlog, there arguably is no "line."  **The**

**petitioner is left *Waiting for Godot* (Samuel Becket).**

**A lack of agency resources does not preclude an agency from exercising its**

**nondiscretionary duty to adjudicate the asylum application.** ***See e.g., Zhou v. FBI Director*, No. 07-cv-238-PB, 2008 WL 2413896, at \*7 (D.N.H. June 12, 2008).**

Significantly, many courts have rejected this line of reasoning, and the rationale of their decisions provides a strong argument in defense of any government claim related to "net gain" or judicial interference with the use of agency resources.  For example, in *Zhou*, the court rejected the government's argument that advancing the cases of those whose applications were most seriously delayed "would seriously interfere with higher or competing priorities." 2008 WL 2413896, at \*7.  The court explained: **[T]he fact that the relevant agencies lack sufficient resources to timely process all . . . applications is ultimately a problem for the political branches ... It is not the aggrieved applicants who have created this problem, and it would not be appropriate for the courts to shift the burdens of this [ ] onto the shoulders of individual immigrants**.  *Id*.; *see also Tang v. Chertoff*, 493 F. Supp. 2d 148, 158 (D. Mass. 2007) (noting that the lack of sufficient agency resources is a "policy crisis" but finding that "it is not plaintiffs who ask the Court to take on the burden of remedying this crisis.  Rather, it is defendants who ask the Court to relieve the pressure by excusing them from their statutory duty and letting the cost fall on immigrant plaintiffs."); *see also Alkeyani v. DHS*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007); *Daraji v. Monica*, No. 07-1749, 2008 WL 183643, \*6-7 (E.D. Pa. Jan. 18, 2008); *Jin v. Heinauer*, No. 2:07-cv-0068, 2007 WL 4287657, \*4 (S.D. Oh. Dec. 4, 2007); *Liu v. Chertoff*, No. CV-06-1682-ST, 2007 WL 2435157, at \*96 (D. Or. Aug. 29, 2007); *Galvez v. Howerton*, 503 F. Supp. 35, 39 (C.D. Cal. 1980); *Jianhua Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1171-72 (N.D. Cal. 2007).

**E. The court should also consider the nature and extent of the interests prejudiced by delay**

Here, the petitioner suffers the psychological trauma of not knowing if she can keep her new life in the United States or if she will be sent back to her country of origin where she could be persecuted due to her asylum application. Also, the petitioner suffers from not being able to reunite with husband and children, to obtain legal status, to find a good job, to have a normal family. **No one deserves this type of administrative forest.**

**F. The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed**

The large asylum backlog causes an unreasonable adjudication delay based on the facts of the case. The petitioner does not need to identify wrongdoing by the agency. Mandamus relief, however, is not contingent on proving some form of wrongdoing by the agency.

### Conclusion-Relief Required

For the foregoing reasons, a Writ of Mandamus and relief under the Administrative Procedure Act should be issued to review the agencies' delay in this matter. The violations of fairness and justice against the petitioner should be remedied at all deliberate speed.

Respectfully Submitted,

David L. Bacon

Attorney for Petitioner

January 7, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on **January 7, 2024**, I electronically filed the foregoing

Documents, with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to those attorneys of record registered on the CM/ECF

system. All other parties shall be served in accordance with the Federal Rule of

Civil Procedure.

David L. Bacon

Attorney for the Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**Form CV-141. Certificate of Compliance**

**Case Number(s)** | 2:24-cv-00150

I am the attorney or self-represented party.

This Brief contains {5373}  **words,** excluding the items exempted

I certify that this brief *(select only one)*:

ⓧ complies with the word limit of L.R. 11-6.1.

◌ complies with the word limit designated by court order dated [                    ].

ⓧ complies with the page limit of L.R. 11-6.1 as a typewritten or handwritten brief.

**Signature** | David C. Been

**Date:** January 7, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

**Total Number of Pending Form I-589 Applications by Fiscal Year & Quarter**

| Quarter | I-589 Applications Received | I-589 Adjudications Completed* | Total I-589 Applications Pending |
|---|---|---|---|
| FY 2018 | | | |
| Quarter 1 | 32,420 | Data unavailable | 307,635 |
| Quarter 2 | 28,504 | | 318,624 |
| Quarter 3 | 22,396 | | 319,563 |
| Quarter 4 | 22,721 | | 319,202 ** |
| FY 2019 | | | |
| Quarter 1 | 23,538 | Data unavailable | 325,514 |
| Quarter 2 | 22,920 | | 327,984 |
| Quarter 3 | 25,845 | | 330,612 |
| Quarter 4 | 24,558 | | 339,836 |
| FY 2020 | | | |
| Quarter 1 | 20,149 | 12,558 | 353,562 |
| Quarter 2 | 23,192 | 15,022 | 358,419 |
| Quarter 3 | 25,905 | 4,855 | 373,957 |
| Quarter 4 | 23,888 | 6,842 | 386,014 |
| FY 2021 | | | |
| Quarter 1 | 14,206 | 8,411 | 394,101 |
| Quarter 2 | 15,306 | 10,628 | 398,928 |
| Quarter 3 | 13,371 | 9,580 | 403,947 |
| Quarter 4 | 18,270 | 11,523 | 412,796 |
| FY 2022 | | | |
| Quarter 1 | 27,121 | 9,727 | 432,341 |
| Quarter 2 | 40,919 | 11,423 | 468,080 |
| Quarter 3 | 42,093 | 10,771 | 509,093 |

\* USCIS did not comprehensively track asylum applications adjudicated during FY 2018 and 2019

\*\* Only quarter when total pending I-589s decreased

**Sources:** USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2022, 3rd*

*Quarter)* (Nov. 3, 2022); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year*

*2022, 2nd Quarter)* (July 15, 2022); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2022, 1st Quarter)* (March 9, 2022); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2021, 4th Quarter)* (Dec. 15, 2021); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2021, 3rd Quarter)* (Aug. 17, 2021); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2021, 2nd Quarter)* (June 23, 2021); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2021)* (April 22, 2021); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2020)* (Jan. 25, 2021); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2019)* (Jan. 14, 2020); USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2018)* (Feb. 18, 2019).

1-589 Affirmative Asylum Summary Overview
FY2022 QI (Oct 1, 2021 -Dec 31, 2021)



U.S. Citizenship and
Immigration Services

Table 1 through Table 5 present quarterly summary statistics for 1-589 Affirmative Asylum Cases. Monthly 1-589 summary statistics are presented in Appendix I through Appendix VIII.  Appendix IX through Appendix Xll presents monthly and quarterly summary statistics for Asylum Division Screening Cases (Credible Fear and Reasonable Fear screenings).

Table I. FY2022 QI Affirmative Asylum Filings, Completions, and Interviews — Asylum Division

|  | Total | Weekly Average |
|---|---|---|
| Filings | 31,025 (100%) | 2,216 |
| Top country - Venezuela | 7419 (24%) | 530 |
| Ail others | 23,606 (76%) | 1,686 |
|  |  |  |
| Case Completions* | 9,040 | 646 |
|  |  |  |
| Scheduled Interviews | 10,624 (100%) |  |
| Interviews Completed | 6,480 (61%) | 462 |
| No Shows/Reschedules | 4,144 (39%) | 297 |

Table 2. FY2022 QI Total Affirmative Asylum Cases Filed, Completed — Asylum Office

|  | Cases Filed | Percent | Cases Com leted | Percent | Completion to Filin Ratio |
|---|---|---|---|---|---|
| Asylum Divisi on | 31,025 | 100% | 9,040 | 100% | 0,29 |
| Arlington | 3,163 | 10% | 589 | 7% | 0.19 |
| Boston | 1,070 | 3% | 276 | 3% | 0.26 |
| Chicago | 2,596 | 9% | 1,165 | 13% | 0.43 |
| Houston | 2,926 |  | 398 | 4% | 0.14 |
| Los Angeles | 2,358 | 8% | 1,384 | 15% | 0.59 |
| Miami | 10,432 | 34% | 976 | 11% | 0.09 |
| New Orleans | 774 | 2% | 303 | 3% | 0.39 |
| New York | 1,869 | 6% | 1,552 |  | 0.83 |
| Newark | 1,859 | 6% | 1,257 | 14% | 0.68 |
| San Francisco | 2,206 | 7% | 949 | 10% | 0.43 |
| Tampa | 1,662 | 5% | 181 | 2% | 0411 |

Filings include newly cases received only. Due to delays in data entry, recent filings may not be captured within two months of receipts. This report extracted data at least one quarter after the reporting period and the data may not match other OSCIS public reports.

Differences between reports may be attributable to data entry delays and when the data were extracted from USC'S data systems.

Completions defined as cases administratively closed or decided on the merits. Figure includes cases that have been decided but not yet served.

Page 1

Table 3. FY2022 QI 1-589 Interviews Scheduled/Interview Outcome -Asylum Division

|  | Total | Percent |
|---|---|---|
| Scheduled Interviews | 10,624 | 100% |

| Completed Interviews | 6,480 | 61% |
|---|---|---|
| Canceled by LISCIS | 2,077 | 20% |
| Canceled by Applicant | 857 | |
| NO Shows | 1,133 | 11% |
| Outcome Unknown | 77 | 1% |

Table 4. FY 2022 QI 1-589 Interviews Scheduled/Completions - Asylum Office

| | Scheduled Interviews | Perce nt | Completed Interviews | Percent | Completed Interviews to Scheduled Interviews Ratio |
|---|---|---|---|---|---|
| Asylum Division | 10,624 | 100% | 6,480 | 100% | 0.61 |
| Arlington | 712 | 7% | 395 | 6% | 0.55 |
| Boston | 303 | 3% | 200 | 3% | o. 66 |
| Chicago | 1,096 | 10% | 880 | 14% | 0.80 |
| Houston | 228 | 2% | 173 | 3% | o. 76 |
| Los Angeles | 2,018 | 19% | 851 | 13% | 042 |
| Miami | 1,089 | 10% | 731 | 11% | 0467 |
| New Orleans | 351 | 3% | 231 | | 0.66 |
| New York | 1,866 | | 1118 | 17% | 0.60 |
| Newark | 1,649 | 16% | 983 | 15% | 0.60 |
| San Francisco | 1,093 | | 759 | 12% | 0.69 |
| Tampa | 219 | 2% | 159 | 2% | 0.73 |

## David Bacon Law Firm (CA Bar#42692)
### 119 S. Atlantic Blvd., Suite 306, Monterey Park, CA 91754-1680
### Phone: 626 616 9930; 626 695 0660; davidbaconlaw@gmail.com

December 9, 2023

Los Angeles Asylum Office
P.O.Box 2003, Tustin, CA 92781-2003
losangelesasylum@uscis.dhs.gov

### Notice of Intent to File Lawsuit

Re: Cuixiao Zhang's I-589 Application Outside Normal Processing Times
**Your office has received the petitioner's I-589 Application on 06/06/2016**;
A# 209 179 997; Receipt # ZLA1600

Dear Director of Los Angeles Asylum Office:

This Letter of Intent to Sue shall serve as a formal notice that Cuixiao intends to
commence a Writ of Mandamus lawsuit in 30 days against respondents listed
below due to unreasonable delay in the processing of his I-589 Application for
Asylum and for Withholding of Removal (your office has received her biometric
collection on June 17, 2016); unreasonable "last in first our approach" and
observing other asylum seekers, who filed applications before or after my client
filed application, had been interviewed by the Los Angeles Asylum Office.

The petitioner: Cuixiao Zhang
The Respondents: Los Angeles Asylum Office, USCIS Los Angeles District Office,
USCIS, USDHS, US attorney for Central District of CA & US Attorney General

Petitioner's demand: As a result of your actions, the Petitioner seeks to receive
the Asylum Office's interview notice on her I-589 Application within 30 days
effective from December 9, 2023.

This Letter of Intent shall be governed under Federal Law.

Sincerely,
David L. Bacon
David L Bacon

## Application Statement

My name is Cuixiao Zhang. I came from a rural village in Shijiazhuang, Hebei Province of China. I registered marriage with my husband Zhenyong Chen on December 27, 1995. Our first child is a boy. After lactating period, the family planning office required me to wear IUD. Since I had the IUD, I always felt unwell, with irregular menstruation and terrible pain on my waist. It even affected my work and life. I once applied to the Family Planning Office for taking off my IUD. They did not approve my application unless I had ligation. Afterwards, I took the IUD off at a private clinic, and then my body condition gradually came to normal.

In June of 2015, I got unplanned pregnant. Both my husband and I decided to keep it secretly. After our village family planning committee heard about my pregnancy, they came to catch me for abortion several times. In order to escape from it, I hid away not daring to go back home. When the due date was approaching, it was too hard for me to move. So my husband picked me up home on the midnight of March 4 of 2006. On March 8 at about 8:00 AM, staff of family planning office came to caught me for odinopoeia. In order to protect our child from being killed, my husband and I bent on knees to beg them to give our child a chance to live. We promised to accept any punishment. Finally, the office decided to fine us by 20,000 RMB and we must do ligation. On March 14, under supervision of Family Planning Office, I gave birth to my second son through cesarean delivery. In the meanwhile, I was done the ligation.

After the surgery, my wound was hard to heal. I was in bed for more than 2 months. I always felt dizzy and unable to move freely. The terror and pain of being done ligation always lingered in my heart. Even by now, I haven't recovered completely. It is hard for me to do labor work because of my waist pain and weak strength, which sometimes makes me unable to stand up and move freely.

Although many years passed, it still recalls my painful memories. China's Family Planning Office is like policy of kill. It deprived me of bearing right. It harmed me physically and mentally. I desire for human right and freedom. I look forward to new life keeping away from the haze. With regards to this, I earnestly request the U.S. government to grant me asylum.


Applicant: Cuixiao Zhang

May 28, 2016

27